COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| JNY, L.P., and JNY, II, L.P., | § | No. 08-07-00253-CV |
| Appellants, | § | |
| | § | Appeal from |
| v. | § | 327th District Court |
| RABA-KISTNER CONSULTANTS, | § | |
| INC., and RABA-KISTNER-ANDERSON CONSULTANTS, INC., D/B/A | § | of El Paso County, Texas |
| RABA-KISTNER CONSULTANTS (SW), INC., | § | (TC # 2004-628) |
| | § | |
| Appellees. | § | |

**O P I N I O N**

JNY, L.P. and JNY II, L.P., collectively JNY, appeal the trial court's order dismissing with

prejudice the negligence counterclaims alleged against Raba-Kistner Consultants, Inc., and Raba-

Kistner-Anderson Consultants, Inc. d/b/a Raba-Kistner Consultants (SW), Inc., collectively Raba-

Kistner. For the reasons that follow, we reverse and remand.

**FACTUAL BACKGROUND**

In the trial court, Raba-Kistner filed suit against JNY to collect fees for professional services

performed at the Jones Apparel Building located at 11891 Alameda, El Paso, Texas. On July 19,

2004, JNY answered and counterclaimed for negligence for failure to adequately inspect and/or test

soil conditions in the building pads prior to construction. Raba-Kistner moved to dismiss the

counterclaims with prejudice. The trial court found that Chapter 150 of the Texas Civil Practices

and Remedies Code applied to the counterclaims and ordered JNY to comply with Section

150.002(a) by a date certain. Subsequently, both parties amended their pleadings, and Raba-Kistner

again moved to dismiss JNY's negligence counterclaim for failure to comply with Section 150.002(a). The trial court granted the motion and entered a severance order. This appeal follows.

## TEX.CIV.PRAC.&REM.CODE ANN. § 150.001

In Point of Error One, JNY claims the trial court erred because Section 150.002 is not applicable since Raba-Kistner is not a licensed professional engineer or "design professional" as defined by statute. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 150.001 (Vernon 2005).

### *Standard of Review*

We review a dismissal pursuant to Section 150.002 for an abuse of discretion. *Criterium-Farrell Eng'rs v. Owens*, 248 S.W.3d 395, 397 (Tex.App.--Beaumont 2008, no pet.); *see also Palladian Bldg. Co., Inc. v. Nortex Found. Designs, Inc.*, 165 S.W.3d 430, 433 (Tex.App.--Fort Worth 2005, no pet.); *Gomez v. STFG, Inc.*, No. 04-07-00223-CV, 2007 WL 2846419, at *1 (Tex.App.--San Antonio Oct.3, 2007, no pet.)(mem.op.). Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court does not demonstrate an abuse of discretion. *Palladian*, 165 S.W.3d at 433.

Statutory construction is a question of law which we review *de novo*. *Id*. at 436. Once we determine the proper construction, we must then decide whether the trial court abused its discretion in applying the statute. *Id*. A trial court has no discretion in determining what the law is or in applying the law to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). Our primary objective is to determine the Legislature's intent and give it effect. *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003). We must interpret the statute according to its plain meaning. *Id*. We must read the statute as a whole and not in isolated portions. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). We read every word, phrase, and expression as if it were deliberately chosen, and we presume the words excluded from the statute are done so purposefully. *Gables*

*Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.*, 81 S.W.3d 869, 873 (Tex.App.--Austin 2002, pet. denied).

### The Origin of Chapter 150

Chapter 150 of the Texas Civil Practices and Remedies Code was part of House Bill 4 which was considered and enacted by the Legislature in 2003. TEX.H.B. 4, 78TH LEG., R.S. (2003). H.B. 4 was a comprehensive civil justice reform bill intended to address and correct problems the Legislature believed impaired fairness and efficiency in the court system. The bill addressed the filing of non-meritorious lawsuits, and the authors' stated intent was to bring more balance to the civil justice system, reduce litigation costs, and address the role of litigation in society.

### The 2003 Statute

As originally enacted, Chapter 150, entitled "Design Professionals," applied to registered architects and licensed professional engineers. TEX.CIV.PRAC.&REM.CODE ANN. § 150.001; Acts 2003, 78th Leg., ch. 204, § 20.01, eff. Sept. 1, 2003. Section 150.002 required a certificate of merit in any action for damages alleging professional negligence by a design professional:

> [T]he plaintiff shall be required to file with the complaint an affidavit of a third-party registered architect or licensed professional engineer competent to testify and practicing in the same area of practice as the defendant, which affidavit shall set forth specifically at least one negligent act, error or omission claimed to exist and the factual basis for each such claim. The third-party professional engineer or registered architect shall be licensed in this state and actively engaged in the practice of architecture or engineering.

TEX.CIV.PRAC.&REM.CODE ANN. § 150.002. Failure to provide an affidavit could result in dismissal with prejudice. *Id.* JNY's primary argument is that because Raba-Kistner is a corporation, it cannot be a "design professional," as that term is defined:

> In this chapter, 'design professional' means a registered architect or licensed professional engineer.

TEX.CIV.PRAC.&REM.CODE ANN. § 150.001.

JNY emphasizes that the term "engineer" is a word of art and is statutorily defined as a person engaged in the practice of engineering in Texas. TEX.OCC.CODE ANN. § 1001.002(2)(Vernon 2004). Additionally, Sections 1001.301(a) and 1001.301(e) distinguish a "person" from an entity.

> (a) A person may not engage in the practice of engineering unless the person holds a license issued under this chapter.
>
> * * * * *
>
> (e) A person, sole proprietorship, firm, partnership, association, or corporation that engages in or offers or attempts to engage in conduct described by this section is conclusively presumed to be engaged in the practice of engineering.

TEX.OCC.CODE ANN. §§ 1001.301(a), (e). JNY reasons that the Occupations Code must be read in conjunction with Chapter 150 of the Texas Civil Practices and Remedies Code such that only individuals may be licensed as engineers. A corporation cannot satisfy the statutory eligibility requirements for a license, which includes gradation and testing requirements.

We agree that Chapter 150 is meant to serve a gatekeeper function to limit and/or control claims against design professionals. However, it is not clear from either the legislative history or the language of the 2003 statute that design professionals include entities such as Raba-Kistner. This is further evidenced by the Legislature's rewording of Section 150.001 in the 2005 amendments.

*2005 Amendments*

During the regular session of the 79th Legislature, two bills were passed by both the House

and Senate and signed by the governor, ironically on the very same day.[1]  House Bill 854 originated

in the Civil Practices Committee and addressed only Chapter 150 of the Texas Civil Practices and

Remedies Code.  For purposes of our analysis, the amendment to Section 150.001 is relevant:

> Sec. 105.001.  DEFINITION.  In this chapter "licensed or registered [] professional"
> means a registered architect, registered professional land surveyor, or licensed
> professional engineer.

Acts 2005, 79th Leg., R.S., ch. 189, § 1, 2005 TEX.GEN.LAWS 348.   The House Research

Organization Bill Analysis, dated April 19, 2005, contains this Digest:

> HB 854 would extend the requirement under sec. 150.002 for a third-party affidavit
> in professional negligence suits to include registered professional land surveyors.  It
> also would change the title of ch. 150 from 'Design Professionals' to 'Licensed or
> Registered Professionals.'

House Bill 1573 originated in the Licensing and Administrative Procedures Committee and

addressed not only Chapter 150 of the Texas Civil Practices and Remedies Code but the "practice

of architecture" provisions of the Occupations Code as well.  By virtue of H.B. 1573, Chapter 150

was amended in the following relevant particulars:

> Sec. 150.001.  DEFINITIONS [DEFINITION].  In this chapter:
>
> (1) 'Design [, 'design] professional' means a licensed [registered] architect, [or]
> licensed professional engineer, or any firm in which such licensed professional
> practices, including but not limited to a corporation, professional corporation, limited
> liability corporation, partnership, limited liability partnership, sole proprietorship,
> joint venture, or any other business entity.
>
> (2) 'Practice of architecture' has the meaning assigned by Section 1051.001,
> Occupations Code.

---

[1]   H.B. 854 passed the House of Representatives on April 20, 2005 and passed the Senate on May 12, 2005.
It was signed by Governor Perry on May 27, 2005.  H.B. 1573 passed the House on March 29, 2005 and passed the
Senate on May 17, 2005.  It too was signed by Governor Perry on May 27, 2005.

Acts 2005, 79th Leg., R.S., ch. 208, § 2, 2005 TEX.GEN.LAWS 370. H.B. 1573 retained the title of Chapter 150 as "Design Professionals" and did not add "registered professional land surveyors" to the definition of a design professional.

If amendments to the same statute are enacted at the same session of the Legislature, one amendment without reference to the other, the amendments shall be harmonized if possible so that effect may be given to each. TEX.GOV'T CODE ANN. § 311.025(b)(Vernon 2005). If the amendments are irreconcilable, the latest in date of enactment prevails. *Id.* "Date of enactment" is the date on which the last legislative vote is taken on the bill enacting the statute. TEX.GOV'T CODE ANN. § 311.025(d). In this instance, codification reflected an effort to harmonize the bills. H.B. 854 was effective from May 27, 2005 until August 31, 2005; H.B. 1573 was effective from September 1, 2005 until August 31, 2009. By virtue of the 2009 amendments, the disconnect between the titles of Chapter 150 was resolved by Senate Bill 1201:

> SECTION 1. The heading to Chapter 150, Civil Practice and Remedies Code, as amended by Chapters 189 (H.B. 854) and 208 (H.B. 1573), Acts of the 79th Legislature, Regular Session, 2005, is reenacted to read as follows:

> CHAPTER 150. LICENSED OR REGISTERED PROFESSIONALS

Acts 2009, 81st Leg., ch. 789, § 1, 2009 TEX.GEN.LAWS 1989, eff. Sept. 1, 2009. Reenactment is required by both the Government Code and the Texas Constitution. *See* TEX.GOV'T CODE ANN. § 311.025(c); TEX.CONST. art. 3, § 36.

We turn now to the effect of the 2005 amendments. Clearly, they do not apply retroactively:

> This Act applies only to an action filed on or after the effective date of this Act. An action filed before the effective date of this Act, including an action filed before that date in which a party is joined or designated after that date, is governed by the law in effect immediately before the change in law made by this Act, and that law is continued in effect for that purpose.

Acts 2005, 79th Leg., R.S., ch. 189, § 4, 2005 TEX.GEN.LAWS 348, eff. Sept. 1, 2005. Because JNY's original counterclaims were filed on July 19, 2004, the 2003 statutory provisions control.

*Analysis*

Raba-Kistner contends that the 2005 amendments reflect an effort to harmonize the Civil Practices and Remedies and the Occupations Code to effectuate the original intent of the authors that the certificate of merit requirement apply to persons and entities alike. In fact, the schism between the bills passed by two separate committees reveals the opposite. The bill which emerged from the Civil Practices Committee did not add references to corporate entities. The bill which emerged from the Licensing and Administrative Procedures Committee did. And that committee clearly understood the problem, because both the Civil Practices and Remedies Code and the Occupations Code were amended by their H.B. 1573. We interpret the amendments to mean that the Legislature did not originally intend to include corporate entities within the definition of design professionals. We thus conclude that the trial court erred in dismissing JNY's counterclaims for negligence because the "certificate of merit" requirement does not apply. We sustain Issue One and reverse and remand for trial. Because of our resolution of Issue One, we need not address Issue Two.


January 27, 2010

ANN CRAWFORD McCLURE, Justice

Before McClure, J., Rivera, J., and Salas-Mendoza, Judge
Salas-Mendoza, Judge, sitting by assignment