Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




## OPINION

No. 04-11-00056-CV

**JAY MILLER & SUNDOWN, INC.** d/b/a Sundown Construction,
Appellant and Cross-Appellee

v.

**CAMP DRESSER & MCKEE, INC.** d/b/a CDM,
Appellee and Cross-Appellant

From the 83rd Judicial District Court, Val Verde County, Texas
Trial Court No. 26,518
Honorable Carl Pendergrass, Judge Presiding

Opinion by:　Steven C. Hilbig, Justice

Sitting:　　　Catherine Stone, Chief Justice
　　　　　　Sandee Bryan Marion, Justice
　　　　　　Steven C. Hilbig, Justice

Delivered and Filed:　August 15, 2012

REVERSED AND REMANDED

　　Jay Miller & Sundown, Inc. ("Sundown") appeals the summary judgment granted in favor of Camp Dresser & McKee Inc. ("CDM") on the ground that Sundown's claim for tortious interference with contract was barred by the statute of limitations. Sundown argues that the statute of limitations was not available to CDM as a defense because CDM was properly joined in the action as a responsible third party pursuant to chapter 33 of the Texas Civil Practice and Remedies Code. CDM contends that Sundown misinterprets and misapplies Chapter 33. CDM

argues alternatively in a cross-point that the trial court erred in denying its motion to dismiss the suit pursuant to section 150.002 of the Civil Practice and Remedies Code because Sundown did not file a certificate of merit. We hold the trial court erred in granting the summary judgment and that under the law applicable to Sundown's claim, no certificate of merit was required. We therefore reverse the trial court's judgment and remand for further proceedings.

BACKGROUND

CDM is an engineering firm that contracted with the City of Del Rio to provide design and construction administrative services for a project to replace and improve parts of the City's water distribution system. CDM designed the project, managed the bidding process, and provided construction administrative services after construction began. In April 2003, the City contracted with Sundown to be the general contractor on the project. The contract required Sundown to construct water lines throughout the city, install a booster pump station, and construct an elevated storage tank. Sundown began work in June 2003, and the contract required the project be substantially complete within 365 days and be complete for final payment by July 8, 2004. The contract contained a liquidated damages clause and a provision that if the City, the project engineer or others performing work for the City or for whom the City was responsible, delayed, disrupted, or interfered with the performance or progress of the work, then Sundown was entitled to an equitable adjustment in the contract price, the contract times, or both. CDM was not a party to the contract between Sundown and the City, and Sundown did not have a separate contract with CDM. The City terminated CDM's contract at the end of 2004. Because of numerous delays, the project was not finally complete until January 2005.

Sundown sued the City in February 2007 for breach of contract and violation of the Prompt Payment Act. Sundown alleged the City, through its employees and agents, delayed,

disrupted, and interfered with performance of the work, resulting in additional work, expense, and overhead and significantly delaying the completion date. Sundown sought unpaid sums due under the contract, including change orders and additional work, delay damages, interest, and attorney's fees. In October 2009, Sundown amended its petition to add a claim under the Texas Tort Claims Act for property damage caused by the City's negligent operation or use of water pumping equipment. Sundown alleged the City's improper operation of the water pumps that supplied pressure to water lines caused some lines to burst, causing flooding of the project site and damage to Sundown's work and property. Sundown further alleged that had the City not improperly interfered with and delayed the work, Sundown would have progressed beyond the site of the flooding when the pipes burst and its damages would have been less.

The City amended its answer, pleading that to the extent Sundown's negligence allegations against the City were found to be true, CDM was a responsible third party within the meaning of section 33.011(6) of the Texas Civil Practice and Remedies Code. At the same time, the City filed an unopposed motion for leave to designate CDM a responsible third party pursuant to section 33.004 of the Civil Practice and Remedies Code. The trial court signed an order granting the motion.[1] In December 2009 and within sixty days of the designation, Sundown filed an amended petition, joining CDM as a defendant, and alleging causes of action against CDM for tortious interference with contract, negligent misrepresentation, and fraud.

Sundown later settled with and nonsuited the City. CDM filed a motion to dismiss, alleging Sundown had not filed a certificate of merit as required by chapter 150 of the Civil Practice and Remedies Code. CDM also filed a motion for summary judgment on the ground that Sundown's causes of action were barred by the statute of limitations. The trial court heard

---

[1] CDM complains in its brief that it had no notice of the City's designation or motion and no opportunity to object to them. CDM suggests this lack of notice violated its right to due process. However, CDM did not raise this complaint or seek a ruling on it in the trial court. Accordingly, these issues are not before us.

arguments on the motions and took them under advisement. At the next hearing in the case, the trial court orally rendered its rulings granting summary judgment on the tortious interference claim, denying summary judgment on the fraud and negligent misrepresentation claims, and denying CDM's motion to dismiss. On the same day, Sundown filed its fourth amended petition, naming CDM as the sole defendant and dropping the fraud and negligence claims. The court then signed a final judgment.

Sundown appeals the summary judgment. CDM argues in a cross-point that the trial court should have dismissed the suit for failure to file a certificate of merit.

## STATUTE OF LIMITATIONS

The parties agree the statute of limitations on Sundown's tortious interference claim is two years and that Sundown joined CDM as a defendant more than two years after CDM's last involvement in the project. CDM's motion for summary judgment asserted the claim is barred by limitations. Sundown contends the trial court erred in granting the motion because former section 33.004(e)[2] of the Texas Civil Practice and Remedies Code authorizes it to pursue the claim even though it would otherwise be barred by limitations.

### *Applicable law and standard of review*

As a defendant moving for summary judgment on the affirmative defense of limitations, CDM had the burden to conclusively establish the defense. *See Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). We review summary judgments and issues of statutory construction *de novo*. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011); *Carreras v.*

---

[2] In 2011, section 33.004 was amended to delete subsection (e) and to add a new subsection (d). Act of May 8, 1995, 74th Leg., R.S., ch. 136, §1, 1995 Tex. Gen. Laws 971, 972, *amended by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, art. 4, 2003 Tex. Gen. Laws 847, 855, *amended by* Act of May 25, 2011, 82nd Leg., R.S., ch. 203, §§ 5.01-5.02, 2011 Tex. Sess. Law Serv. ch. 203 (West) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 33.004 (West Supp. 2011)). The parties agree that former section 33.004(e) applies in this case. All references to section 33.004(e) are to the now-repealed subsection.

*Marroquin*, 339 S.W.3d 68, 71 (Tex. 2011). The court's "primary objective in construing statutes is to give effect to the Legislature's intent." *Molinet*, 356 S.W.3d at 411 (citing *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009)). "The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Id.*

Chapter 33 of the Civil Practice and Remedies Code is the "complex statutory scheme for the comparative apportionment of responsibility among parties in most tort actions in Texas." *Galbraith Eng'g*, 290 S.W.3d at 868. Among other things, it allows a tort defendant to designate as a responsible third party a person who has not been sued by the plaintiff, but who is alleged to have caused in any way the harm for which the plaintiff seeks damages. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.004(a) (West Supp. 2011), § 33.011(6) (West 2008). When such designation is made, subsection 33.004(e) authorizes the plaintiff to join the person as a defendant and, if joinder is sought within sixty days of the designation, limitations cannot be raised as a bar. *See Galbraith Eng'g*, 290 S.W.3d at 865. The relevant statutory sections state:

§ 33.011 Definitions

In this chapter:

(1) "Claimant" means a person seeking recovery of damages, including a plaintiff, counterclaimant, cross-claimant, or third-party plaintiff. . . .

(2) "Defendant" includes any person from whom, at the time of the submission of the case to the trier of fact, a claimant seeks recovery of damages.

. . .

(6) "Responsible third party" means any person who is alleged to have caused or contributed to causing in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these. The term "responsible third party" does not include a seller eligible for indemnity under Section 82.002.

TEX. CIV. PRAC. & REM. CODE § 33.011 (West. 2008).

> § 33.004  Designation of Responsible Third Party
>
> (a) A defendant may seek to designate a person as a responsible third party by filing a motion for leave to designate that person as a responsible third party.  The motion must be filed on or before the 60th day before the trial date unless the court finds good cause to allow the motion to be filed at a later date.
>
> . . .
>
> (e) [repealed] If a person is designated under this section as a responsible third party, a claimant is not barred by limitations from seeking to join that person, even though such joinder would otherwise be barred by limitations, if the claimant seeks to join that person not later than 60 days after that person is designated as a responsible third party.
>
> (f) A court shall grant leave to designate the named person as a responsible third party unless another party files an objection to the motion for leave on or before the 15th day after the date the motion is served.

*Id.* §33.004 (West 2008; West Supp. 2011).[3]

***Discussion***

Sundown argues the trial court erred in granting summary judgment.  Sundown contends that because all the statutory procedural steps for designating and joining a responsible third party were precisely followed in this case, CDM's limitations defense is defeated by section 33.004(e).  We agree.

Sundown's tort claim against the City alleged the City's operation or use of motor-driven water pumps caused water lines to rupture, flooding areas in which Sundown was working.  Sundown alleged the flooding damaged its property, including construction work it had already performed and later had to repair.  Sundown additionally alleged:

> Had the overall PROJECT schedule not been delayed . . ., Sundown would have progress[ed] beyond those areas ultimately impacted by the flooding before the flooding occurred.  Consequently, the delays caused by DEL RIO, by and through their [sic] employees, agents and other individuals for whom DEL RIO is

---

[3] *See* note 2, *supra*.

responsible, also contributed to the amount of property damage incurred by Sundown as a result of the flooding.

After Sundown added this tort claim against the City, the City timely designated CDM a responsible third party for the tort damages sought against it, both in its pleadings and by timely filing a motion to designate. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(a). The City's pleadings asserted that CDM was a responsible third party within the meaning of section 33.011(6) of the Texas Civil Practice and Remedies Code because CDM's tortious conduct caused the harm for which Sundown sought to recover damages from the City. The trial court granted the unopposed motion for leave to designate CDM a responsible third party. *See id.* § 33.004(f). Within sixty days of the designation, Sundown joined CDM as a defendant in the suit. *See id.* § 33.004(e).

The third amended petition listed numerous acts and omissions of CDM that Sundown alleged delayed, disrupted, and interfered with Sundown's contract with the City. Sundown generally alleged CDM's acts and omissions caused the project to be significantly delayed and that Sundown incurred actual damages and loss as a result. The petition alleged the delays and interruptions increased Sundown's costs and expenses and damaged its relationship with the City. The petition also alleged that the delays and interruptions caused Sundown to be working in the area flooded when the water lines burst, causing damage to both Sundown's personal property and to the work. Sundown prayed broadly for recovery against CDM for its actual damages, consequential damages, incidental damages, compensatory damages, interest, fees, and costs.

The City's pleadings asserted CDM's tortious conduct caused or contributed to the property damage for which Sundown sought to recover against the City in its tort claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.011(6)(definition of "responsible third party"). The

City complied with the statutory requirements for designating CDM a responsible third party, and the court properly granted leave to so designate CDM. *See id.* § 33.004(f) (court "shall" grant leave absent timely objection by a party). Pursuant to section 33.004(e), Sundown was therefore "not barred by limitations" from joining CDM as a party defendant "even though such joinder would otherwise be barred by limitations." *Id.* § 33.004(e); *see Flack v. Hanke*, 334 S.W.3d 251, 258-63 (Tex. App.—San Antonio 2010, pet. denied).

In response, CDM asserts that, construing Chapter 33 as a whole, subsection 33.004(e) "cannot revive a limitations-barred tort claim unless the harm for which the plaintiff seeks recovery of damages against the responsible third party is the same harm for which the plaintiff seeks recovery of damages against the original, designating defendant." CDM argues section 33.004(e) does not apply in this case and the trial court properly granted summary judgment on its limitations defense because (1) Sundown does not allege CDM caused or contributed to the property damage that was the basis of Sundown's tort claim against the City; (2) CDM was not a legal cause of the property damages Sundown sought to recover against the City; and (3) it would "lead to an absurd result by making CDM a joint tortfeasor with [the City] for tort damages that Sundown did not seek to recover against [the City]." We address each of these arguments in turn.

CDM first argues the tortious interference claim is barred by limitations "because the harm for which Sundown seeks recovery of damages against CDM is not the same harm for which Sundown sought recovery of damages against Del Rio." Initially, we note that CDM's argument focuses entirely on the substance of the allegations in Sundown's pleading against CDM — the claimant's allegations against the joined defendant (the former responsible third party). However, as the statute is written, whether the statute of limitations is waived is not

dependent on the substance of the claimant's allegations against the joined defendant. Section 33.004(e) provides that limitations does not bar the joinder if (1) the person was designated under section 33.004 as a responsible third party and (2) joinder was sought within sixty days of the designation. Those two conditions were indisputably met in this case. Under a plain reading of the statute, no further inquiry is necessary to conclude that the statute of limitations may not be raised as a bar to Sundown's tortious interference with contract claim. *See Flack*, 334 S.W.3d at 258-60.

Nevertheless, we also disagree with CDM's contention that Sundown did not allege "acts or omissions that caused or contributed to causing the property damage forming the basis of Sundown's claim against Del Rio under the Texas Tort Claims Act." Against the City, Sundown sought to recover for the damage to its property, including the cost to repair the work in progress at the site of the flooding. Both the City and Sundown alleged that CDM's conduct in delaying progress of the work caused or contributed to the damage caused by the flooding. Sundown's petition joining CDM and Sundown's third amended petition, filed while the City remained a defendant in the case, clearly alleged that CDM's tortious conduct contributed to causing the harm for which Sundown sued the City in tort. And, contrary to CDM's assertion that Sundown sought only economic damages from it, Sundown's pleadings seeking "actual," "consequential," "incidental," and "compensatory" damages are broad enough to encompass property damage.

In its post-submission brief, CDM argues for the first time that we should review the summary judgment in light of the allegations made in Sundown's fourth amended petition. We disagree. First, as discussed above, whether section 33.004(e) abrogates a limitations defense depends on whether a responsible third party was properly designated and timely joined; it does not depend on the substance of the allegations in a subsequent petition against the joined

defendant. Second, the record clearly establishes the summary judgment was based on Sundown's third amended petition. The third amended petition was its live pleading when the motion for summary judgment was filed, when it was heard by the trial court, and when the motion was taken under submission. When the case was next called for hearing over a month later, the court announced it was ready to rule on the pending motions, including the motion for summary judgment. The trial judge noted he had just received the fourth amended petition, which had been filed earlier in the day, but stated he had not reviewed the amended petition in reaching its decision. Finally, our conclusion would not be different were we to consider the fourth amended petition. Because the fourth amended petition was filed after the City was dismissed as a defendant, it does not contain allegations relating to the tort claim against the City and therefore does not expressly allege that CDM's conduct contributed to the harm caused by the City's tort. The fourth amended petition alleges the numerous acts of interference and delay by CDM that caused harm and damage to Sundown and prays broadly for actual damages, which could reasonably include the property damages Sundown previously sought against the City.

CDM argues in its post-submission brief that the summary judgment should be affirmed because Sundown's allegations of delay are "too attenuated to have 'caused or contributed in any way to the harm for which' Sundown sought damages against Del Rio," and as a matter of law could not be a legal cause of Sundown's injuries. However, CDM did not move for summary judgment on the ground there was no evidence it proximately caused any of Sundown's damages. Rather, it moved for and obtained summary judgment on an affirmative defense of limitations. Moreover, CDM is essentially contending that section 33.004(e) does not apply because it should not have been designated a responsible third party. In *Flack v. Hanke*, this

court held that Chapter 33 does not authorize a joined defendant to litigate its previous designation as a responsible third party. 334 S.W.3d at 261-63.

In its final argument, CDM contends that Sundown's interpretation of Chapter 33 would lead to an absurd result "by making CDM a joint tortfeasor with Del Rio for tort damages that Sundown did not seek to recover against Del Rio." CDM contends Sundown should not be allowed to use section 33.004(e) to revive the tortious interference claim because the tort allegedly caused economic losses substantially beyond contributing to the harm caused by the City's tort, losses which were completely unrelated to the flooding and which Sundown could not have recovered in a tort claim against the City. However, nothing in Chapter 33 requires the original defendant and the joined responsible third party be joint tortfeasors with respect to all the damages sought in order for section 33.004(e) to apply. We have previously recognized that, although Chapter 33 is generally considered a defense-oriented statute, the revival of limitations provision in section 33.004(e) provides a benefit to plaintiffs that may be subject to manipulation:

> Section 33.004(e) creates the potential to revive otherwise barred claims against a designated RTP. This procedure may result in the plaintiff collaborating with a defendant to join additional tortfeasors. For example, section 33.004(e) allows a plaintiff to sue a defendant with little or no liability, and that defendant may then designate the true tortfeasor as an RTP. The plaintiff subsequently may join the true tortfeasor, avoid a limitations defense, and nonsuit the original defendant.

*Flack*, 334 S.W.3d at 256 (citation omitted). In *Flack*, we rejected appellant's public policy argument that limitations should not be revived because "their designation as responsible parties was "unrelated to the purpose of section 33.004 and . . . nothing more than an attempt to manipulate the process and circumvent statutory limitations." *Id.* at 260. Instead, we applied the plain language of the statute and held that "[b]ecause section 33.004 provides that a properly designated responsible third party may be joined regardless of limitations, the trial court erred in

granting the motion[] for summary judgment based on limitations." *Flack*, at 260; *see also Villarreal v. Wells Fargo Brokerage Servs., LLC*, 315 S.W.3d 109, 122 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (rejecting public policy argument against reviving barred claim and applying plain language of statute). Likewise, because CDM was properly designated a responsible third party and Sundown timely joined CDM as a defendant, the trial court erred by granting summary judgment based on the statute of limitations. Whether the purpose or language of Chapter 33 limits in any way the damages that Sundown can recover against CDM does not bear on whether the cause of action is barred by limitations and is not an issue before us.

### CERTIFICATE OF MERIT

CDM cross-appeals the trial court's order denying its motion to dismiss pursuant to chapter 150 of the Civil Practice & Remedies Code. That chapter requires the trial court dismiss with prejudice a suit arising out of the provision of professional services by an engineering firm if an affidavit certifying the merit of the complaint is not filed with the complaint. TEX. CIV. PRAC. & REM. CODE ANN. §§ 150.001(1), 150.002(a), (d) (West 2011). Sundown did not file a certificate of merit, but contends its claim against CDM is governed by a prior version of Chapter 150, under which no certificate of merit was required in a tortious interference with contract suit against a corporation.

We review a ruling on a motion to dismiss under section 150.002 for abuse of discretion. *Kniestedt v. S.W. Sound & Electronics, Inc.*, 281 S.W.3d 452, 454 (Tex. App.—San Antonio 2007, no pet.). However, construction of the statutory language is a question of law we review using the *de novo* standard. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex.

2009); *JNY, L.P. v. Raba-Kistner Consultants, Inc.*, 311 S.W.3d 584, 585 (Tex. App.—El Paso 2010, no pet.).

When Chapter 150 was enacted in 2003, it applied only to a claim of professional negligence against a "design professional," which was defined as "a registered architect or licensed professional engineer." Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 20.01, 2003 Tex. Gen. Laws 847, 896 (amended 2005 and 2009) (current version at TEX. CIV. PRAC. & REM. CODE ANN. §§ 150.001-.002) ("2003 Act"). The 2003 Act was subsequently construed as applying only to claims against *individual* architects and engineers, and not to claims against architectural or engineering corporations or firms. *Raba-Kistner*, 311 S.W.3d at 588; *J.E. Saenz & Assocs. v. Munoz*, No. 13-10-00139-CV, 2011 WL 193113, at *3 (Tex. App.—Corpus Christi-Edinburg Jan. 13, 2011, no pet.).

The Legislature amended Chapter 150 twice in 2005. The first 2005 amendment changed some of the wording of the statute and added registered professional land surveyors to its scope. *See* Act of May 12, 2005, 79th Leg., R.S., ch. 189, 2005 Tex. Gen. Laws 348 (amended 2009) (current version at TEX. CIV. PRAC. & REM. CODE ANN. §§ 150.001-.002). This amendment took effect immediately on the governor's signature May 27, 2005. *Id.*

The second 2005 amendment was passed without reference to the changes made by the earlier 2005 amendment. *See* Act of May 18, 2005, 79th Leg., R.S., ch. 208, 2005 Tex. Gen. Laws. 369 (amended 2009) (current version at TEX. CIV. PRAC. & REM. CODE ANN. §§ 150.001-.002) ("the second 2005 Act"). The second 2005 Act changed the definition of "design professional" to mean:

> a licensed architect, licensed professional engineer, or any firm in which such licensed professional practices, including but not limited to a corporation, professional corporation, limited liability corporation, partnership, limited liability partnership, sole proprietorship, joint venture, or any other business entity.

*Id.* ch. 208, § 2. This amendment also made Chapter 150 apply "[i]n any action or arbitration proceeding for damages arising out of the provision of professional services by a design professional." *Id.* The changes to Chapter 150 made by the second 2005 Act applied "only to a cause of action that accrues on or after the effective date of this Act." *Id.* ch. 208, § 4. The Legislature further provided that "[a]n action that accrued before the effective date of this Act is governed by the law applicable to the action immediately before the effective date of this Act, and that law is continued in effect for that purpose." *Id.* The second 2005 Act became effective September 1, 2005. *Id.* ch. 208, § 5. Thus, the second 2005 Act, which made the certificate of merit requirement applicable to suits against firms, applied only to causes of action that accrued on or after September 1, 2005. It is undisputed that Sundown's tortious interference claim against CDM accrued before December 31, 2004, before the effective date of the second 2005 Act.

In 2009, the Legislature reenacted Chapter 150 to harmonize the two 2005 amendments. Act of May 29, 2009, 81st Leg., ch. 789, 2009 Tex. Gen. Laws 1991 ("2009 Act"). *See Raba-Kistner*, 311 S.W.3d at 586-87 (discussing amendments and legislative history). The 2009 Act also added registered landscape architects to its scope, detail regarding the qualifications of the expert, and a new subsection specifying the required contents of the certificate of merit affidavit. *Id.* The 2009 Act was effective September 1, 2009, and section 3 of the Act stated:

> The change in law made by this Act applies only to an action or arbitration filed or commenced on or after the effective date of this Act. An action or arbitration filed or commenced before the effective date of this Act is governed by the law in effect immediately before the effective date of this Act, and that law is continued in effect for that purpose.

*Id.* ch. 789 §§ 3, 4.

CDM argues that the current 2009 version of Chapter 150 applies to Sundown's tortious interference claim because, although Sundown's suit against the City was filed before September 1, 2009, CDM was not joined as a defendant until December 2009. CDM argues the action against it therefore was not "filed or commenced" until after the effective date of the 2009 Act. As Chapter 150 is currently written, a certificate of merit must be filed in a tort suit against an engineering firm. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 150.001-.002 (West 2011). Sundown responds that the trial court correctly denied the motion to dismiss because this suit, filed before the 2009 Act, is governed by an earlier version of Chapter 150.

We agree with Sundown that the certificate of merit requirement does not apply to its claims against CDM in this case. By its terms, the enabling provision in the 2009 Act governs only the applicability of the "change in law" made by that Act. The controlling question in this case is whether the change to section 150.001 made by the second 2005 Act that made Chapter 150 applicable to suits against firms, applies. That provision of the law was not changed by the 2009 Act. The legislative enactment that imposed the certificate requirement on suits against firms expressly excluded causes of action such as Sundown's against CDM that accrued before September 1, 2005. Act of May 18, 2005, 79th Leg., R.S., ch. 208, § 4, 2005 Tex. Gen. Laws. 369, 370. We hold the 2009 amendments did not have the effect of making the certificate of merit requirement applicable to causes of action against firms that accrued before the effective date of the second 2005 Act. The trial court therefore did not abuse its discretion by denying CDM's motion to dismiss.[4]

---

[4] We also agree with Sundown and the Austin Court of Appeals that, as used in section 4 of 2009 Act, "an action" is "filed or commenced" when the original petition is filed. *See S & P Consulting Eng'rs, PLLC v. Baker*, 334 S.W.3d 390, 395-398 (Tex. App.—Austin 2011, no pet.) (holding that, "for purpose of the effective date of the 2009 version of section 150.002, an action commences when the original petition is filed. For this purpose, the action does not recommence with the filing of an amended petition even if that petition names a new defendant for the first time"); *but see Nangia v. Taylor*, 338 S.W.3d 768, 770-71 (Tex. App.—Beaumont 2011, no pet.) (holding 2009 Act applies to claim against engineer joined in suit in 2010, even though suit was filed in 2008).

## CONCLUSION

We hold the trial court erred in granting summary judgment for CDM on statute of limitations grounds.  We further hold CDM was not required to file a certificate of merit affidavit, and the trial court did not abuse its discretion in order denying CDM's motion to dismiss under Chapter 150 of the Texas Civil Practice and Remedies Code.  We therefore reverse the trial court's judgment and remand the cause to the trial court for further proceedings.

Steven C. Hilbig, Justice